**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THURMOND ALLEN, JR.,** | : | **CIVIL ACTION NO. 1:24-CV-1536** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

<u>**MEMORANDUM**</u>

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983.  Plaintiff, Thurmond Allen, Jr., asserts various civil rights and state tort claims arising from allegedly deficient dental care against numerous defendants employed by Mahanoy State Correctional Institution ("SCI-Mahanoy"), Camp Hill State Correctional Institution ("SCI-Camp Hill"), the Pennsylvania Department of Corrections ("DOC"), and the DOC's medical services subcontractor, Wellpath LLC ("Wellpath").  We have screened the complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A and will dismiss it for failure to state a claim upon which relief may be granted except to the extent that it asserts deliberate indifference, negligence, and malpractice claims against defendant Smith.  Allen will be granted leave to file an amended complaint.

I.    <u>**Factual Background & Procedural History**</u>

According to the complaint, Allen broke part of a tooth on the left side of his mouth and a metal filling in the tooth while biting into a raw radish on June 10, 2023.  (Doc. 1 ¶ 38).  He immediately experienced "excruciating" pain in the tooth

and the left side of his mouth and face.  (Id. ¶ 39).  Allen submitted a request slip to be seen by a dentist.  (Id. ¶ 40).  He then asked officers in his housing unit if he could be triaged for emergency dental care, but they told him that there were no dentists present on weekends.  (Id. ¶ 41).  Allen tried to continue eating his meal, but experienced more pain whenever he ate food or drank water.  (Id. ¶ 43).  He also purportedly experienced "very bad breath" shortly after the incident.  (Id. ¶ 44).  The pain from the injury made him unable to sleep that night.  (Id. ¶ 45).

On June 14, 2023, prison officials called Allen to the prison's dental department for an appointment with defendant Smith, a dentist in the prison.  (Id. ¶ 48).  Smith examined the cracked tooth and then placed a "fluoride, minty flavored varnish" to cover the missing filling.  (Id. ¶ 50).  Smith purportedly told Allen that the varnish would "hold [him] over" until the tooth and the filling could be repaired.  (Id. ¶ 52).  Smith did not otherwise clean or remove plaque from Allen's mouth or the affected area.  (Id.)  He also allegedly did not treat Allen's bad breath other than telling him that dental floss was available for purchase in the prison's commissary.  (Id. ¶ 54).  Allen told Smith that he was unable to purchase items from the commissary because he had previously been placed on commissary restriction, but Smith purportedly did not provide any additional treatment.  (Id. ¶ 55).  The varnish that Smith placed on Allen's tooth temporarily stopped food and liquids from getting into the tooth and temporarily alleviated Smith's pain.  (Id. ¶ 57).

Allen's pain returned the following day, which prevented him from eating, drinking, or sleeping normally.  (Id. ¶ 58).  He again requested dental care but did not receive a response from the dental department.  (Id.)  He submitted several

more requests for dental care in the following weeks, but allegedly did not receive responses to the requests.  (Id. ¶ 60).

On July 3, 2023, Allen filed another request for dental care.  (Id. ¶ 61). Defendants Corrina, Easterday, and Jane Doe #1 called Allen to the dental department on July 5, 2023, despite there being no dentist present at the time.  (Id. ¶ 62).  While Allen was there, Easterday, a correctional officer in the prison, purportedly verbally harassed Allen by stating, "you'll be OK," "it probably doesn't hurt that bad," "come on now," and "did you try flossing."  (Id. ¶ 63).  Defendants Corrina and Jane Doe then told Allen that they could not prescribe pain medication and that defendant Smith would not be able to treat him until July 10, 2023.  (Id. ¶ 64).  Corrina told Allen that the most they could do in the interim was send him to the medical department to see if pain medication could be prescribed.  (Id. ¶ 65). Corrina also purportedly told Allen that the dental department could not provide adequate care to inmates because there were only two dentists responsible for treating more than 2000 inmates in the prison.  (Id. ¶ 68).

Allen went to the medical department, where defendant John Doe, a physician's assistant, told him that a previously scheduled x-ray on Allen's left elbow had been rescheduled for July 7, 2023.[1]  (Id. ¶ 72).  Defendant Jane Doe #3, a nurse in the medical department, told Allen to submit another request for dental care and gave Allen one Motrin pill.  (Id. ¶¶ 73-74).  The Motrin purportedly did not

---

[1] The complaint does not explain why this x-ray was needed or whether it was connected to the facts of this case.

relieve Allen's pain.  (Id. ¶ 74).  Defendant Easterday then allegedly "rush[ed]" Allen to leave the medical department before he could receive any further treatment. (Id.)  Allen submitted additional requests for dental care and pain medication shortly after he left the medical department.  (Id.)

The complaint avers that at some point prior to the events at issue in this case, Allen had filed grievances against defendant Easterday complaining that Easterday was harassing him and invading his privacy during his medical appointments.  (Id. ¶ 78).  Easterday allegedly retaliated against Allen for the filing of these grievances "on many occasions" by "interfering" with Allen's medical appointments and preventing Allen from receiving care.  (Id. ¶ 80).  Easterday purportedly told Allen that it was time to leave appointments on several occasions when Allen "wanted him to leave him alone and give him privacy."  (Id.)

On July 10, 2023, Allen attended an appointment in the dental department with defendant Smith.  (Id. ¶ 101).  Smith purportedly told Allen that there was no cavity on the tooth, but that the metal filling needed to be replaced because there was no enamel on the tooth.  (Id. ¶ 103).  Allen told Smith about his continued pain and difficulty eating, drinking, and sleeping.  (Id. ¶ 104).  The complaint asserts that Smith again applied the "fluoride minty flavor varnish" on the tooth but otherwise did not treat Allen, did not remove the plaque from his teeth, and did not prescribe him pain medication.  (Id. ¶¶ 105-07).  The varnish purportedly kept food from entering the tooth for one day, but did not alleviate Allen's pain.  (Id. ¶ 109).

The complaint asserts that over the next several months Allen repeatedly informed several defendants holding supervisory roles in SCI-Mahanoy and the

DOC of the continued lack of treatment by the dental department through the filing
of grievances and other written complaints, including defendants DOC, SCI-
Mahanoy, Mason, Banta, Machally, Moore, Varner, Wellpath, Hauser, and Hittner.
(Id. ¶ 90).  He continued to experience "severe" pain in his tooth during this period,
as well as insomnia, headaches, and weight loss from not being able to eat or drink
as he normally would.  (Id. ¶¶ 92-93).

After Allen filed several additional requests for dental care that did not
receive responses, he was called to the dental department for treatment on August
16, 2023.  (Id. ¶ 125).  Smith again applied varnish to Allen's tooth but did not
otherwise treat him.  (Id. ¶ 126).  Smith purportedly refused to clean Allen's teeth or
remove plaque, but stated that he would be scheduled for an appointment to repair
his filling.  (Id. ¶ 129).  Smith also did not prescribe pain medication.  (Id. ¶ 135).
The varnish came off the following day, and Allen again experienced "excruciating"
pain in the tooth.  (Id. ¶ 136).  Allen filed several additional requests for dental care
in the next two months, which purportedly went unanswered.  (Id. ¶ 137).

On October 5, 2023, Allen was temporarily located at SCI-Camp Hill on a writ
for a court hearing.  (Id. ¶ 138).  SCI-Camp Hill officials called him to the prison's
dental department for an appointment with defendant Balsalmo, a dentist in the
prison.  (Id.)  Balsalmo reviewed Allen's dental records from SCI-Mahanoy and
purportedly stated that Allen should have been prescribed pain medication for the
period when he was awaiting treatment on his tooth.  (Id. ¶¶ 139-40).  Balsalmo then
allegedly stated that he did not understand why officials at SCI-Mahanoy had
waited several months to treat Allen's tooth when doing so would only take

approximately thirty minutes.  (Id. ¶¶ 141-42).  Following this conversation, Balsalmo repaired Allen's tooth by filling in the cavity.  (Id. ¶ 144).  He did not clean Allen's teeth or prescribe pain medication or dental floss.  (Id.)

The following day, Allen felt pain and pressure in the repaired tooth and requested dental care.  (Id. ¶ 145).  Allen was taken for an appointment with Balsalmo, who purportedly stated that the pressure Allen was feeling was normal and expected.  (Id. ¶¶ 146-47).  Defendant Denise, a dental hygienist in the prison, was present for this appointment.  (Id. ¶ 146).  Balsalmo adjusted the filling on Allen's tooth by shaving it down with a drill, which relieved the pressure and pain Allen was feeling.  (Id. ¶ 149).  Balsalmo did not clean Allen's teeth or give him dental floss, but he prescribed him Motrin for his pain.  (Id. ¶ 150).

The complaint asserts that the lack of treatment for several months was caused by a policy propounded by Wellpath, the DOC's medical services contractor, of "applying varnish repeatedly to cover cavities instead of filling and repairing them, denying floss, denying and delaying adequate pain meds, denying hospital admissions and weekend emergency health/dental services, giving only over the counter NSAIDs, injections of Toradol, denying and delaying physical therapy, denying and delaying referrals to specialists, [and] denying and delaying cleanings." (Id. ¶ 165).  The complaint avers that the former CEO of Wellpath, Gerard Boyle,[2] was convicted and sentenced for conspiracy to commit honest services mail fraud in 2022 based on a bribery scheme involving Wellpath's contracts.  (Id. ¶¶ 163-64).

---

[2] Boyle is not named as a defendant.

The complaint asserts the following claims for relief: (1) deliberate indifference in violation of the Eighth Amendment by all defendants, (Id. ¶¶ 173-212, 228-45, 264-78); (2) retaliation in violation of the First Amendment, violation of Allen's First Amendment right to be "left alone," invasion of privacy, intrusion upon seclusion, and "injurious falsehood" by defendant Easterday, (Id. ¶¶ 213-20, 246-53, 262-63) (3) violation of Allen's Fourteenth Amendment rights to due process and equal protection by defendants Smith, Corrina, Easterday, Varner, Moore, Mason, Machally, Banta, Houser, Hitner, SCI-Mahanoy, and Jane Does 1 and 2, (Id. ¶¶ 221-27, 279-82); (4) battery, negligent misrepresentation, fraudulent misrepresentation, "deceit," and lack of informed consent by defendants Smith and Balsalmo, (Id. ¶¶ 254-61, 395-445, 439-69)[3]; (5) municipal liability and "corporate negligence" against defendant Wellpath, (Id. ¶¶ 283-89, 335-54); (6) negligence and medical malpractice by all defendants, (Id. ¶¶ 290-326, 355-76, 446-438);[4]; (7) vicarious liability against defendants Mason, Varner, Moore, Machally, Banta, Houser, Hittner, and SCI-Mahanoy, (Id. ¶¶ 327-34); and (8) intentional and negligent infliction of emotional

---

[3] The complaint erroneously proceeds from paragraph number 441 to paragraph number 453 on pages 42-43.  The court cites the paragraph numbers as they appear in the complaint.

[4] The complaint erroneously proceeds from paragraph number 452 to paragraph number 432 on pages 41-42.  The court cites the paragraph numbers as they appear in the complaint.

distress by all defendants, (Id. ¶¶ 377-94).[5]  Allen seeks damages, declaratory relief,

and injunctive relief.  (Id. ¶¶ 497-502).

## II.    **Legal Standard**

The Prison Litigation Reform Act authorizes a district court to review a

complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or

seeks redress against a governmental employee or entity.  See 28 U.S.C. §

1915(e)(2);[6] 28 U.S.C. § 1915A.[7]  The court is required to identify cognizable claims

---

[5] The complaint advances thirty-seven counts.  The court has consolidated and grouped the claims by legal theory and defendants in the interest of brevity and clarity.

[6] 28 U.S.C. § 1915(e)(2) provides:

**(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
   **(A)** the allegation of poverty is untrue; or
   **(B)** the action or appeal—
      **(i)** is frivolous or malicious;
      **(ii)** fails to state a claim on which relief may be granted; or
      **(iii)** seeks monetary relief against a defendant who is immune from such relief.

[7] 28 U.S.C. § 1915A provides:

**(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
   **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
   **(2)** seeks monetary relief from a defendant who is immune from such relief.

and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

**III.    Discussion**

Allen brings his federal constitutional claims under 42 U.S.C. § 1983.  Section 1983 creates a cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

To state a civil rights claim upon which relief may be granted, a plaintiff must allege the defendant's personal involvement.  Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018).  The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence.  Id.  We will analyze Allen's thirty-seven claims for relief, which we have consolidated and organized by groups of defendants, below.

## A.    Claims Against DOC and Its Subsidiaries

The court will dismiss Allen's claims against the DOC, SCI-Mahanoy, SCI-Camp Hill, SCI-Mahanoy's dental department, and the DOC's bureau of healthcare services.  The DOC and its subsidiary prisons and departments are not "persons" subject to suit under Section 1983.  See Curtis v. Everette, 489 F.2d 516, 521 (3d Cir. 1973); accord Foye v. Wexford Health Servs., Inc., 675 F. App'x 210, 215 (3d Cir. 2017); Pettaway v. SCI Albion, 487 F. App'x 766 (3d Cir. 2012).

## B.    Claims Against Wellpath

Allen's claims against Wellpath will be dismissed.  "To state a claim against a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue."  Palakovic v. Wetzel, 854 F.3d 209, 232 (3d Cir. 2017) (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003)).  Allen alleges that the individual defendants delayed dental care and provided deficient care because of a Wellpath policy, (see Doc. 1 ¶ 165), but this allegation is contradicted by the allegation that Balsalmo—who purportedly was also an employee of Wellpath—immediately treated Allen's tooth upon his arrival in SCI-Camp Hill.  (See Doc. 1 ¶¶ 23, 138-44).  Based on the four corners of the complaint it appears that any decision to delay or provide deficient dental care to Allen was made by individual defendants and did not follow from a Wellpath policy.

## C.    Claims Against Dentists

Allen raises a host of claims against dentist defendants Smith and Balsalmo, including deliberate indifference to a serious medical need, battery, negligent

misrepresentation, fraudulent misrepresentation, "deceit," lack of informed consent, negligence, malpractice, intentional infliction of emotional distress, and negligent infliction of emotional distress.  We analyze these claims *seriatim*.

### 1.    Deliberate Indifference

To state a deliberate indifference claim, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale, 318 F.3d at 582 (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  Id. (citation omitted).  An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Upon review of the complaint, we find that the complaint states a deliberate indifference claim against defendant Smith.  The complaint alleges that Allen cracked his tooth and filling while eating, that Smith examined the tooth and filling on several occasions but did not repair them, that Smith did not prescribe Allen pain medication, and that he did not provide Allen any treatment other than

applying a varnish that temporarily abated his pain.  We find these allegations sufficient to allege a serious medical need and deliberate indifference to that need.

The complaint fails to state a deliberate indifference claim against defendant Balsalmo.  The only allegations against Balsalmo are that he immediately treated Allen's broken tooth and filling upon his arrival in SCI-Camp Hill and then provided additional care on the following day to relieve pressure and pain Allen was feeling after the treatment.  (See Doc. 1 ¶¶ 138-50).  These allegations cannot plausibly be considered deliberate indifference to a serious medical need.

### 2.    Battery and Lack of Informed Consent[8]

To state a tort claim for battery under Pennsylvania law, a plaintiff must allege that the defendant engaged in harmful or offensive contact with the plaintiff's body.  C.C.H. v. Philadelphia Phillies, Inc., 940 A.2d 336, 340 n.4 (Pa. 2008).  Here, the only allegations of physical contact by defendants Smith and Balsalmo are that they provided dental care to treat Allen's broken tooth and filling.  Although Allen asserts that the care was deficient, there is no allegation that the physical contact the dentists made was itself harmful or offensive.

The battery claim also fails to the extent it is based on a purported lack of informed consent.  Allen alleges that Smith and Balsalmo failed to adequately inform him of the relevant risks prior to treating his broken tooth and filling, (see Doc. 1 ¶ 428-445), but prior to defendants providing this treatment Allen repeatedly

---

[8] The court analyzes these claims together because a claim that a medical professional has treated a patient without informed consent sounds in a theory of battery under Pennsylvania law.  Brady v. Urbas, 111 A.3d 1155, 1158 n.2 (Pa. 2015).

requested dental care for the broken tooth and filling. A reasonable dentist would understand these requests as consent to perform the dental care necessary to repair the tooth and filling. <u>See, e.g.</u>, <u>DiCenzo v. Berg</u>, 16 A.2d 15, 17 & n.4 (Pa. 1940) (noting that words or conduct by patient that would lead a reasonable person to conclude that patient was consenting to treatment defeat claim that patient was not given informed consent).

### 3.    Misrepresentation and Deceit

Allen's claims of fraudulent misrepresentation, negligent misrepresentation, and deceit will all be dismissed. To plead any of these claims, a plaintiff must allege that the defendant made a false statement. <u>See, e.g.</u>, <u>Gregg v. Ameriprise Fin., Inc.</u>, 245 A.3d 637, 646 (Pa. 2021) (noting that negligent misrepresentation claim requires allegation of misrepresentation of material fact); <u>Martin v. Lancaster Battery Co., Inc.</u>, 606 A.2d 444, 448 (Pa. 1992) (noting that fraudulent misrepresentation claim requires allegation of misrepresentation); <u>Savitz v. Weinstein</u>, 149 A.2d 110, 113 (Pa. 1959) (noting that cause of action for deceit requires allegation of misrepresentation). Allen's misrepresentation and deceit claims are based on: (1) Smith stating that the varnish he applied to Allen's broken tooth would "hold [Allen] over" until the tooth could be repaired; (2) Smith stating that floss was available for purchase in the commissary; and (3) Balsalmo giving Allen "the impression" that his tooth and filling were completely repaired, despite the fact that Allen had to return for follow-up treatment.

Smith and Balsalmo's statements as to the effectiveness of their treatments amount to nothing more than opinions. "A statement of opinion does not constitute

a fraudulent misrepresentation." 2 SUMM. PA. JUR. 2D TORTS *Statement of Opinion Not Fraud* § 16:31, Westlaw (database updated Oct. 2024).  Similarly, there is no allegation that Smith misrepresented facts when he stated that floss was available for sale in the commissary.  (<u>See</u> Doc. 1 ¶¶ 54-55).  Allen purportedly told Smith that he could not purchase items from the commissary because he was on commissary restriction, but this does not make the underlying representation—that floss was available in the commissary—false.  (<u>See</u> <u>id.</u>)  Hence, we will dismiss the misrepresentation and deceit claims for failure to allege a misrepresentation.

> **4.    Negligence and Malpractice**

To state claims for negligence or medical malpractice under Pennsylvania law, a plaintiff must allege (1) that the defendant owed him a duty of care; (2) that the defendant breached the duty; (3) that the defendant's breach caused the plaintiff injury; and (4) that the plaintiff suffered actual loss or damage as a result. <u>Brewington *ex rel.* Brewington v. City of Philadelphia</u>, 199 A.3d 348, 355 (Pa. 2018); <u>Quinby v. Plumsteadville Family Practice, Inc.</u>, 907 A.2d 1061, 1070 (Pa. 2006).

Having reviewed the complaint, the court finds the allegations that Smith delayed repairing Allen's broken tooth and filling for several months, did not provide him pain medication, and did not provide any treatment other than applying a varnish that temporarily relieved Allen's discomfort sufficient to state malpractice and negligence claims upon which relief may be granted.  The claims against Balsalmo, however, will be dismissed for failure to state a claim for essentially the same reasons the deliberate indifference claim against him fails. Balsalmo's actions of promptly treating Allen's broken tooth and filling and

providing follow-up care shortly thereafter simply cannot be construed as a breach of any duty of care.

### 5. Intentional and Negligent Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege (1) extreme and outrageous conduct that (2) intentionally or reckless causes (3) severe emotional distress. Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). To state a claim for negligent infliction of emotional distress, a plaintiff must first plead a prima facie case of negligence and then plead either (1) that he "suffered a physical injury that caused the emotional distress"; (2) that he "suffered no injury, but experienced emotional distress from having been in the 'zone of danger'"; (3) that he "witnessed an accident that seriously injured a close family member"; or, (4) that he "had a special relationship with the defendant that included in it an implied duty to care for their emotional well-being." Finkbeiner v. Geisinger Clinic, 623 F. Supp. 3d 458, 469 (M.D. Pa. 2022).

Allen's complaint fails to plead either claim. With respect to intentional infliction of emotional distress, the alleged actions by defendants Smith and Balsalmo of providing allegedly deficient dental care for Allen's broken tooth and filling simply do not rise to the extreme and outrageous conduct necessary to state a claim for intentional infliction of emotional distress. With respect to negligent infliction of emotional distress, it does not appear that defendants' actions caused a physical injury that caused Allen emotional distress or that he was in the zone of danger for such an injury—the only significant physical injury Allen suffered was

the broken tooth and filling, which occurred before defendants' actions.[9]  Hence, we

will dismiss the claims for infliction of emotional distress for failure to state a claim.

### 6.    Due Process and Equal Protection

Allen also asserts Fourteenth Amendment due process and equal protection

claims against defendant Smith.[10]  (Doc. 1 ¶¶ 221-27).  The due process claim will be

dismissed because it is duplicative of his Eighth Amendment deliberate indifference

claim.  (See Doc. 1 ¶ 222 ("Defendants knowingly deprived plaintiff of a liberty

interest in his body to not be mistreated without notice, hearing and due process of

law where the plaintiff had no other alternative for care.").  "Under the more-

specific-provision rule, 'if a constitutional claim is covered by a specific

constitutional provision, such as the Fourth or Eighth Amendment, the claim must

be analyzed under the standard appropriate to that specific provision, not under the

rubric of substantive due process.'"  Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 447

(3d Cir. 2020) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).

The equal protection claim will be dismissed because Allen has not alleged

the existence of any similarly situated individuals who were treated differently from

him other than the conclusory statement that defendants "treated him different[ly]

than the many John Does similarly situated prisoners who received dental care for

a tooth filling."  (Doc. 1 ¶ 223); see also, e.g., Village of Willowbrook v. Olech, 528

---

[9] The other categories of negligent infliction of emotional distress claims—
injury by a close family member or a special relationship—are plainly inapplicable
to this case.

[10] These claims are not asserted against defendant Balsalmo.

U.S. 562, 565 (2000) (noting that plaintiff asserting equal protection claim must allege that a similarly situated individual was treated differently from him).

### D.    Claims Against Other Dental Defendants

The court will next address the claims against the other defendants who were purportedly personally involved in Allen's dental care, defendants Corrina, Denise, and Jane Does 1-2. These claims will be dismissed. From the four corners of the complaint, it does not appear that these defendants participated in any alleged violations of Allen's rights other than being present when defendant Smith or defendant Balsalmo was providing dental care. Defendants' mere presence cannot plausibly be considered deliberate indifference, violation of Allen's rights to due process or equal protection, negligence, medical malpractice, intentional infliction infliction of emotional distress, or negligent infliction of emotional distress. And because Smith and Balsalmo were these defendants' supervisors, they also cannot be held liable on a supervisory liability theory.

### E.    Claims Against Easterday

Allen asserts numerous claims against defendant Easterday, including retaliation in violation of the First Amendment, violation of Allen's First Amendment right to be "left alone," invasion of privacy, intrusion upon seclusion, "injurious falsehood," deliberate indifference, violation of Allen's right to due process, violation of Allen's right to equal protection, negligence, malpractice, intentional infliction of emotional distress, and negligent infliction of emotional distress. These claims are plainly meritless. Other than conclusory and unsupported assertions of retaliation, (see Doc. 1 ¶¶ 78-80), the only actions

Easterday allegedly took were escorting Allen to his dental appointments, making several flippant comments on one occasion, such as "you'll be OK," "it probably doesn't hurt that bad," "come on now," and "did you try flossing," and "rushing" Allen at one appointment. (See id. ¶¶ 48-80). These allegations are clearly insufficient to support any of the claims asserted against Easterday.

## F.    Claims Against All Other Defendants

Allen's claims against all other defendants—defendants Varner, Moore, Mason, Machally, Bounta, Hauser, and Hittner—are based on their supposed failure to intervene in wrongdoing by the other defendants. There is no allegation that these defendants directly participated in the alleged violations of Allen's rights. Because we have concluded above that the only claims that survive our screening review are Allen's deliberate indifference, negligence, and malpractice claims against defendant Smith, we will analyze these supervisory defendants' liability solely with respect to these claims.

The complaint fails to state a deliberate indifference claim against the supervisory defendants because they were not involved in providing Allen dental care. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," non-medical prison officials cannot be considered deliberately indifferent to a prisoner's serious medical need. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). The complaint asserts that Allen complained about the treatment by the dental department in written grievances to various non-dental personnel, (see Doc. 1 ¶ 90), but Allen has not attached those grievances to his complaint and the complaint alleges that he

was seen for dental care at least six times while he was filing these grievances—on June 14, 2023, July 5, 2023, July 10, 2023, August 16, 2023, October 5, 2023, and October 6, 2023. (See id. ¶ 48, 61, 101, 125, 138, 146). Hence, as presently pleaded, the complaint fails to allege deliberate indifference by the non-dental personnel because there are no allegations to establish that they had reason to believe or actual knowledge that the dental personnel were mistreating or not treating Allen. Spruill, 372 F.3d at 236.

The complaint similarly fails to plead negligence or malpractice claims against these defendants. Based on the allegations in the complaint, it appears that Allen was provided dental treatment six times between June 2023 and October 2023 for his broken tooth and filling. Although Allen allegedly complained to these defendants about his dental care via written grievances, the complaint is devoid of any allegations as to what Allen said in these grievances or how it put them on notice of any wrongdoing for which they should intervene. It is also not clear from the complaint that defendants had any supervisory authority over Smith such that they could be found liable on a theory of respondeat superior or supervisory liability. The claims against defendants Varner, Moore, Mason, Machally, Bounta, Hauser, and Hittner will accordingly be dismissed.

### G.    Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, district courts must permit a curative amendment unless the amendment would be inequitable or futile. Phillips v. Allegheny Cty., 515

F.3d 224, 245 (3d Cir. 2008). We will grant Allen leave to amend his complaint because his claims are factually, rather than legally, deficient.

**IV.**    **Conclusion**

We will dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A except to the extent that it asserts deliberate indifference, negligence, and malpractice claims against defendant Smith. Allen will be granted leave to file an amended complaint. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    November 5, 2024